1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  FABIAN NAVA,                          Case No.:  3:15-cv-01156-AJB-BLM
    CDCR #AH-0190,
12                                        **ORDER:**
                            Plaintiff,
13                                        **1)  GRANTING IN PART AND
             vs.                          DENYING IN PART DEFENDANTS
14                                        MOTION TO DISMISS PURSUANT
    P.  VELARDI;  J.  SILVA;  AVELINO     TO Fed. R. Civ. P. 12(b)(6)
15  CANLAS;  M.  MELLON;  ROGELIO         [ECF No. 28]**
    ORTEGA;   S.   ROBERTS;   KYLE
16  SEELEY;   J.   WALKER;   ROBERT
    WALKER; DAVID CLIFTON ,              **AND**
17
                            Defendants.
18                                        **2)  ISSUING AN ORDER TO SHOW
                                          CAUSE WHY DEFENDANTS
19                                        SHOULD NOT BE DISMISSED FOR
                                          FAILING TO PROSECUTE**
20

21

22

23

24                         **Introduction**

25       Fabian Nava ("Plaintiff"), a prisoner at Richard J. Donovan Correctional Facility

26  ("RJD") in San Diego, California, proceeding pro se and in forma pauperis ("IFP"), is

27  proceeding with a First Amended Complaint ("FAC") filed pursuant to the Civil Rights

28  Act, 42 U.S.C. § 1983 (ECF No. 13).

                               1

1   Defendants Seeley, Rogelio Ortega, Robert Walker and Jason Silva have filed a
2   Motion to Dismiss all claims against them alleged in Plaintiff's FAC pursuant to FED. R.
3   CIV. P. 12(b)(6). *See* Defs. Mot. to Dismiss (ECF No. 28).[1] The Court issued a briefing
4   schedule, determined that no proposed findings and recommendations by the magistrate
5   judge pursuant to 28 U.S.C. § 636(b)(1)(A) and S.D. CAL. CIVLR 72.3(a) would be
6   necessary, and permitted Plaintiff an opportunity to file an Opposition.  On October 27,
7   2016, Plaintiff filed his Opposition but Defendants have not filed a Reply.  (ECF No. 35.)

8   Having considered the Motion on the papers submitted, the Court GRANTS in part,
9   and DENIES in part, Defendants' Motions to Dismiss pursuant to FED. R. CIV. P. 12(b)(6).

10   ## Plaintiff's First Amended Complaint

11   **I.   Factual Allegations**

12   On February 18, 2010, Plaintiff was "sent to an orthopedic specialist" by prison
13   officials.  (FAC at 11.)   At that time, Plaintiff claims he was informed that he "had no
14   option (for life) but to wear a pair of orthopedic shoes/boots, or plaintiff would suffer
15   physical harm."  (*Id*. at 11; Ex. 1, CDCR Comprehensive Accommodation Chrono dated
16   February 22, 2010.)  Approximately two years later on January 31, 2012, Plaintiff had an
17   x-ray of his right knee and claims that it "confirmed a 3mm metallic fragment" in his right
18   knee which was "causing plaintiff severe pain."  (*Id.* at 11.)  However, Plaintiff alleges Dr.
19   Kyle Seeley "refused to provide him with adequate footwear and pain management" on the
20   grounds that it was "too costly for the [CDCR or RJD] to worry about fixing."  (*Id.*)

21   On March 16, 2012, Plaintiff was examined by Nurse Practitioner Pamela Velardi
22   who then rescinded Plaintiff's chrono for orthopedic shoes.  (*Id.*)  Plaintiff claims
23   Defendant Velardi made a note in his chart that Plaintiff indicated he would file a grievance

24

25

26   [1]  No other Defendants have yet to be served, although the U.S. Marshal has returned
27   summonses as unexecuted as to Defendants Velardi, Mellon, Clifton and Canlas (ECF Nos.
     22-25).  No summons has been returned for Defendants S. Roberts and J. Walker nor have
28   these Defendants joined in the Motion currently pending before the Court.

1   and further claims Defendant Velardi commented that filing a grievance "would be a

2   mistake." (*Id.*)  Instead of providing Plaintiff with his orthopedic shoes, Defendant Velardi

3   issued Plaintiff "a pair of shoe insoles because it was 'much less expensive than the

4   footwear.'" (*Id*. Ex. 4, Comprehensive Accommodation Chrono dated April 17, 2012.)

5          Plaintiff was "performing his assigned duties as a Housing Unit Porter" on January

6   25, 2013 when his "right leg/knee/ankle caused him to suffer pain and he lost his balance

7   then fell down a flight of stairs." (*Id.* at 11.)  He alleges that his supervisor, Correctional

8   Officer McGee[2] witnessed the fall.  (*Id.*)  Plaintiff was examined by Dr. M. Mellon whom

9   he claims was already aware of Plaintiff's knee condition but refused to provide him

10  treatment.  (*Id.* at 11-12.)  Plaintiff further alleges that Defendant Mellon "falsified the

11  record" by indicating that no one had witnessed his fall.  (*Id.* at 12.)

12         Plaintiff filed an administrative grievance on May 7, 2012.  (*See* FAC, Ex. 6,

13  Patient/Inmate Health Care Appeal dated May 7, 2012.)  Plaintiff claims both Defendants

14  Velardi and Seeley continued to refuse Plaintiff "adequate medical care because of cost

15  and due to plaintiff filing medical grievance(s)." (*Id.* at 12.)  Plaintiff then sought

16  assistance from the "Prison Law Office" who then contacted Defendant Seeley regarding

17  Plaintiff's medical care.  (*Id.*)  However, Plaintiff claims Defendant Seeley provided the

18  Prison Law Offices with "falsehoods." (*Id.*)

19         On September 20, 2013, Plaintiff was seen by Dr. Rogelio Ortega who was

20  Plaintiff's primary care physician. (*Id.*)  Plaintiff alleges that Defendant Ortega informed

21  him that he was "working on getting plaintiff surgery." (*Id.*)  Plaintiff filed another

22  grievance claiming that RJD medical staff was refusing Plaintiff adequate medical care

23  based on Defendant Velardi's previous actions. (*Id.* at 11, Ex. 12, Patient/Inmate Health

24  Care Appeal dated December 16, 2013.)

25

26

27  _____

28  [2]  Correctional Officer McGee is not a named Defendant.

3:15-cv-01156-AJB-BLM

1    Plaintiff claims Defendant Ortega prescribed physical therapy for him.  (*Id.*)

2  However, when Plaintiff was taken to see the physical therapist, David Clifton, he refused

3  to provide Plaintiff with treatment "based on [Clifton's] opinion that Plaintiff needed

4  surgery first."  (*Id.* at 13.)  Defendant Clifton also believed that Plaintiff should take a

5  different pain medication but allegedly told Plaintiff that "he doubted plaintiff would get

6  proper pain medication or surgery as it was very expensive and therefore, RJD would not

7  approve it as a matter of policy."  (*Id.*)

8    On February 13, 2014, Plaintiff claims that Defendant Ortega subscribed "Lyrica"

9  for his "severe pain" despite the fact that a narcotic would be more effective.  (*Id.*)

10  Defendant Ortega informed Plaintiff that the reason he provided this medication was

11  because the RJD "medical staff were fed up with plaintiff filing grievances."  (*Id.*)  Plaintiff

12  claims that Dr. R. Walker denied the request for Lyrica "even though it was proven that

13  plaintiff was in severe pain and required medication."  (*Id.*)

14    Plaintiff was seen a few weeks later by Dr. Avenilo Canlas who became is primary

15  care physician.  (*Id.*)  Plaintiff requested pain medication for his "severe ongoing pain."

16  (*Id.*)   However, Plaintiff claims Defendant Canlas, following the previous denial by

17  Defendant Walker, refused Plaintiff's request and informed him that he would not order it

18  for Plaintiff "especially since you continue to file grievance(s)."  (*Id.*)

19    On July 14, 2014, Plaintiff was seen by Dr. Jason Silva.  (*Id.* at 14.)  Plaintiff alleges

20  Defendant Silva "acknowledged plaintiff's severe medical conditions" but based on

21  Plaintiff's history of filing medical grievances "decided not to order any treatment not

22  already ordered previously, regardless of plaintiff's pain, injury level or need."  (*Id.*)

23  Plaintiff claims that Defendant Silva told him that RJD was "strapped for money right now

24  due to all the construction on every medical facility at RJD."  (*Id.*)

25    After his examination with Defendant Silva, Plaintiff filed another administrative

26  grievance requesting pain medication and medical care for his "knee/ankle/leg injuries."

27  (*Id.* at 14-15.)  While Plaintiff alleges Defendant Silva must respond to the initial level of

28  this grievance, he has not responded to date.  (*Id.* at 15.)  On September 5, 2014, Plaintiff

1    claims "Dr. Silva finally ordered plaintiff pain medication of Lyrica." (*Id.*) However, he

2    alleges that he was "forced" to sign a "contract stating he could discontinue the medication

3    for any reason." (*Id.*) Plaintiff claims that RJD staff "shopped around" to obtain new

4    medical test results for Plaintiff's condition which they used to show that there was "no

5    damage than previously known to be present in Plaintiff." (*Id.*) Plaintiff claims that he

6    continues to suffer "irreparable harm" as a result of Defendants' actions. (*Id.* at 16.)

7                                              **Discussion**

8    **II.     Legal Standards**

9              **A.      Rule 12(b)(6) Motion to Dismiss**

10            A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

11   sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule

12   12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits,

13   "a court may [ordinarily] look only at the face of the complaint to decide a motion to

14   dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

15   However, courts may consider exhibits that are attached to the complaint. *See* FED. R. CIV.

16   P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the

17   pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896

18   F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe,*

19   *Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the

20   complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.) However,

21   exhibits that contradict the allegations of a complaint may fatally undermine the

22   complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

23   Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary

24   to his claims." (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.

25   1998) (courts "are not required to accept as true conclusory allegations which are

26   contradicted by documents referred to in the complaint."))); *see also Nat'l Assoc. for the*

27   *Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th

28   Cir.2000) (courts "may consider facts contained in documents attached to the complaint"

1   to determining whether the complaint states a claim for relief).

2   　　"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

3   accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial

4   plausibility when the plaintiff pleads factual content that allows the court to draw the

5   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

6   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556,

7   570 (2007)).

8   　　"All allegations of material fact are taken as true and construed in the light most

9   favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38

10  (9th Cir. 1996) (citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).

11  The Court need not, however, "accept as true allegations that are merely conclusory,

12  unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988

13  (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also*

14  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported

15  by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286

16  (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion

17  couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not

18  require 'detailed factual allegations,' but it demands more than an unadorned, the

19  defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

20  550 U.S. at 555).

21  　　Thus, "[w]hile legal conclusions can provide the framework of a complaint, they

22  must be supported by factual allegations. When there are well-pleaded factual allegations,

23  a court should assume their veracity and then determine whether they plausibly give rise

24  to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability

25  requirement,' but it asks for more than a sheer possibility that a defendant has acted

26  unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with'

27  a defendant's liability, it 'stops short of the line between possibility and plausibility of

28  'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when a plaintiff has not

1   "nudged [his] claims across the line from conceivable to plausible, [his] complaint must

2   be dismissed.")).

3        "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual

4   content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive

5   of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962,

6   969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

7        **B.**    *Pro Se* **Litigants**

8        "In civil rights cases where the plaintiff appears pro se, the court must construe the

9   pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim-Panahi*

10   *v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is

11   "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th

12   Cir. 1992). The rule, however, "applies only to a plaintiff's factual allegations." *Neitzke v.*

13   *Williams*, 490 U.S. 319, 330 n.9 (1989). In giving liberal interpretation to a *pro se* civil

14   rights complaint, courts may not "supply essential elements of claims that were not initially

15   pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

16   "Vague and conclusory allegations of official participation in civil rights violations are not

17   sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*,

18   733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts

19   insufficient to state a claim under § 1983).

20   **III.**   **Defendants' Motion**

21        Defendants Seeley, Ortega, Walker and Silva move to dismiss all claims against

22   them found in Plaintiff's FAC. (Defs. Mot. at 2.)  Specifically, they claim Plaintiff has

23   failed to alleges facts sufficient to state a claim "under the First, Eighth, and Fourteenth

24   Amendments to the United States Constitution." (*Id.*)  As stated above, Plaintiff has filed

25   an Opposition.  The Court has reviewed Plaintiff's FAC and finds that there is no attempt

26   to allege a Fourteenth Amendment claim and Defendants have not addressed Plaintiff's

27   conspiracy claims brought pursuant to 42 U.S.C. § 1986. (*See* FAC at 8, 18.)  Therefore,

28   the conspiracy claims remain in the action.

1    **A.      Eighth Amendment Inadequate Medical Care Claims**

2          **1.      Standard of Review**

3          Only "deliberate indifference to serious medical needs of prisoners constitutes the

4    unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."

5    *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal quotation marks

6    omitted). "A determination of 'deliberate indifference' involves an examination of two

7    elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the

8    defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

9    1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.

10   1997) (en banc) (quoting *Estelle*, 429 U.S. at 104); *see also Wilhelm v. Rotman*, 680 F.3d

11   1108, 1113 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

12         First, "[b]ecause society does not expect that prisoners will have unqualified access

13   to health care, deliberate indifference to medical needs amounts to an Eighth Amendment

14   violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992),

15   citing *Estelle*, 429 U.S. at 103-104. "A 'serious' medical need exists if the failure to treat

16   a prisoner's condition could result in further significant injury or the 'unnecessary and

17   wanton infliction of pain.'" *McGuckin*, 914 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104).

18   "The existence of an injury that a reasonable doctor or patient would find important and

19   worthy of comment or treatment; the presence of a medical condition that significantly

20   affects an individual's daily activities; or the existence of chronic and substantial pain are

21   examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.*,

22   citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt v. Dental Dept.*,

23   865 F.2d 198, 200-01 (9th Cir. 1989).

24         Here, none of the Defendants argue that Plaintiff has failed to allege facts to

25   plausibly show that his medical needs were 'serious,' and thus, the Court finds Plaintiff's

26   FAC is sufficiently pleaded in this regard.

27         Therefore, the Court must next decide whether Plaintiff's FAC further contains

28   sufficient "factual content" to show that Defendants acted with "deliberate indifference" to

1   his needs. *McGuckin*, 914 F.2d. at 1060; *see also Jett*, 439 F.3d at 1096; *Iqbal*, 556 U.S. at

2   678. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

3   1060 (9th Cir. 2004).

### 2.     Claims against Defendant Seeley

5   Plaintiff alleges Defendant Seeley, the Chief Medical Officer, was deliberately

6   indifferent to his serious medical needs when he refused to supply Plaintiff with orthotic

7   shoes which were a form of treatment for his medical condition.  (*See* FAC at 11-12.)

8   Plaintiff claims that Defendant Seeley denied Plaintiff this treatment due to their expense.

9   (*Id.*)  In support of his showing for the need of these orthotic shoes, Plaintiff supplied a

10   "Comprehensive Accommodation Chrono" dated February 22, 2010.  (*Id.*, Ex. 1.)  In this

11   "chrono" it is noted that "the treatment of [Plaintiff's] condition mandates the exclusive

12   use of this footwear to prevent physical harm."  (*Id.*)  At the top portion of this form, it

13   informs the prescribing physician to "[c]ircle P if the accommodation is to be permanent,

14   or T if the accommodation is to be temporary."  (*Id.*)  The "P" is circled next to the

15   indication that orthotic footwear is to be provided to Plaintiff.  (*Id.*)

16   Plaintiff argues that this demonstrates "deliberate indifference" on the part of

17   Defendant Seeley when he removed this accommodation for Plaintiff.  (Pl.'s Opp'n at 6.)

18   In response, Defendants argue that a decision to review a chrono is to be made annually,

19   as also stated on the form.  (Defs.' Mot. at 23-24.)  In addition, Defendants argue that the

20   decision to deny Plaintiff's "is supported by multiple examinations showing normal stance

21   and gait, ability to walk unassisted, full range of motion in the ankle, ability to tiptoe well,

22   ability to work, absence of atrophy in the lower extremities, ability to squat, normal muscle

23   strength, and apparent ability to accommodate the ankle pain with the insoles."  (*Id.* at 24.)

24   Defendants then refer to a number of medical documents Plaintiff has attached to his FAC

25   as exhibits.  (*Id.*)

26   However, Plaintiff argues that the annual review of a permanent "chrono" is to

27   review the inmate's information and not a review of the necessity for the permanent chrono

28   itself.  Moreover, as Plaintiff notes in his Opposition, he alleges in his FAC that the decision

1    by Seeley to deny Plaintiff the orthotic shoes was based on their cost, along with claims of

2    retaliation for filing grievances, and not on the medical examinations or tests that came

3    after Defendant Seeley's treatment of Plaintiff.  (*See* Pl.'s Opp'n at 7; *see also*  FAC at 12.)

4    Defendants argument would have this Court interpret many medical records and arrive at

5    conclusions that are outside the allegations found in Plaintiff's FAC.  In order to show

6    "deliberate indifference," a Plaintiff must demonstrate that "(a) a purposeful act or failure

7    to respond to a prisoner's pain or possible medical need, and (b) harm caused by the

8    indifference."  *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096.)  Here, the Court

9    finds that Plaintiff has alleged facts sufficient to state an Eighth Amendment claim against

10   Defendant Seeley.

11                    **3.      Defendants Ortega and Silva**

12           Plaintiff alleges that in 2013 Defendant Ortega was his primary physician.  (*See* FAC

13   at 10.)  Plaintiff also acknowledges that Defendant Ortega informed him that he was

14   "working on getting plaintiff surgery" and prescribed physical therapy.  (*Id.* at 11.)   He

15   also acknowledges that Defendant Ortega prescribed the medication Plaintiff wanted even

16   though Defendant Ortega expressed doubts that it would be approved due to cost.  (*Id.*)

17           Defendants argue that Plaintiff received several examinations from Defendant

18   Ortega and Silva, was provided different pain medications and their "progress notes recited

19   comprehensive examinations, diagnostic testing, and treatment."  (Defs.' Mot. at 25.)

20   Plaintiff argues that multiple "meaningless medical procedures" is not indicative of

21   adequate medical care. (Pl.'s Opp'n at 15.)

22           The Court agrees with Defendant Ortega that Plaintiff has not alleged facts to show

23   that he was deliberately indifferent to Plaintiff's serious medical needs.  Plaintiff alleges

24   that Defendant Ortega prescribed physical therapy, medication and informed Plaintiff that

25   he was seeking to get authorization for Plaintiff to receive surgery.  None of these

26   allegations rise to the level of "deliberate indifference."

27           However, with respect to Defendant Silva, Plaintiff alleges that Defendant Silva told

28   Plaintiff that based on Plaintiff's history of filing medical grievances he "decided not to

1    order any treatment not already ordered previously, regardless of plaintiff's pain, injury

2    level or need." (*See* FAC at 14.)  Plaintiff claims that Defendant Silva waited two months

3    to prescribe medication and he suffered severe pain as a result. (*Id.*)  The Court finds that

4    Plaintiff's claims that Defendant Silva allegedly refused to provide treatment as a result of

5    Plaintiff's grievance history does sufficiently allege an Eighth Amendment inadequate

6    medical care claim.

7                    **4.      Defendant Walker**

8           Defendants maintain that Defendant Walker was not Plaintiff's primary care

9    physician and was only involved in Plaintiff's care when he "denied a non-formulary

10   request for Mr. Nava to receive Lyrica." (Defs.' Mot. at 26.)  Plaintiff argues it is irrelevant

11   that Defendant Walker was not his primary care physician but instead, he argues that

12   Defendant Walker denied the Lyrica as a matter of prison policy rather than an individual

13   review of Plaintiff's medical condition and medical needs.  (Pl.'s Opp'n at 16.)   In

14   furtherance of that argument, Plaintiff argues that he was given Lyrica several months later

15   but his medical records do not reflect a change in his medical condition so there is no valid

16   reason why he was denied this medication for over six months. (*Id.*)  Moreover, Plaintiff

17   claims that when the decision was made to allow him to take this drug, there is no

18   documentation to show how the "change of denial of pain medication into an approval"

19   took place.  (*Id.*)

20          Throughout the Defendants' Motion, they point to evidence in the record that

21   requires interpretation that is beyond the scope of a motion to dismiss.  At this stage of the

22   proceedings, the Court finds that Plaintiff has alleged facts sufficient to state an Eighth

23   Amendment claim against Defendant Walker.

24          **B.      Retaliation claims**

25          Defendants also move to dismiss Plaintiff's claims of retaliation in violation of his

26   First Amendment rights.  (*See* Defs.' Mot. at 27-28.)  In order to state a retaliation claim,

27   Plaintiff must allege facts to support the following five factors: "(1) an assertion that a state

28   actor took some adverse action against an inmate (2) because of (3) that prisoner's

1   protected conduct, and that such action (4) chilled the inmate's exercise of his First

2   Amendment right, and (5) the action did not reasonably advance a legitimate correctional

3   goal." *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005); *see also Barnett v. Centoni*,

4   31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam), *Resnick v. Hayes*, 213 F.3d 443, 449 (9th

5   Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997).

6        Defendants only argue that Plaintiff has failed to state a retaliation claim because he

7   has not alleged facts supporting the first element of the claim in that there are no facts to

8   show that Defendants took any "adverse action" against him.  (*See* Defs.' Mot. at 27-28.)

9   However, throughout his FAC, Plaintiff claims he was denied medical treatment because

10  he was filing multiple administrative grievances.  Of fundamental import to prisoners are

11  their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283,

12  1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts."  *Schroeder v.*

13  *McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).

14       Plaintiff alleges Defendant Seeley refused "Plaintiff adequate medical treatment care

15  because of cost and due to Plaintiff filing medical grievances." (FAC at 12.)  Plaintiff

16  alleges Defendant Ortega provided Plaintiff with a less costly, less effective pain

17  medication because "medical staff were fed up with Plaintiff filing grievances." (*Id.* at 13.)

18  Plaintiff claims that Defendant Silva, due to Plaintiff filing medical grievances, "decided

19  not to order any treatment not already ordered previously, regardless of Plaintiff's pain,

20  injury level or need." (*Id.* at 14.)  Based on these allegations, the Court finds that Plaintiff

21  has stated a retaliation claim against these Defendants.

22       However, as to Defendant Walker, the Court finds that Plaintiff has failed to state a

23  retaliation claim.   While Defendant Walker did deny Plaintiff's request for pain

24  medication, he did so through the grievance process.  There are no allegations that Walker

25  was aware of any of Plaintiff's prior grievances, nor is there an allegation that Walker

26  denied Plaintiff's grievance because of his past history.  Therefore, the Court finds that

27  Plaintiff has not stated a retaliation claim against Defendant Walker.

28  / / /

1  **IV.    Remaining Defendants**

2        A review of the Court's docket indicates that Plaintiff has failed to properly serve

3  Defendants Velardi, Canlas, Mellon, S. Roberts, J. Walker and Clifton.   *See Walker v.*

4  *Sumner*,  14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide

5  the Marshal with sufficient information to effect service, the court's sua sponte dismissal

6  of those unserved defendants is appropriate under Fed.R.Civ.P. 4(m)).

7        Accordingly, this Court ORDERS Plaintiff to show cause no later than thirty days

8  (30) after this Order is filed, why the claims against these Defendants should not be

9  dismissed for want of prosecution pursuant to Fed.R.Civ.P. 4(m).  If Plaintiff wishes to

10  proceed with his claims against these Defendants he must provide the Court with proof of

11  proper service within thirty (30) days from the date this Order is filed.   Otherwise,

12  Defendants Velardi, Canlas, Mellon, S. Roberts, J. Walker and Clifton will be dismissed

13  from this action without prejudice.

**Conclusion**

15        For all the reasons discussed, the Court:

16        1)    **GRANTS** Defendant Ortega's Motion to Dismiss Plaintiff's Eighth

17  Amendment claims;

18        2)    **DENIES** Defendants Silva, Seeley. and Walker's Motion to Dismiss

19  Plaintiff's Eighth Amendment claims;

20        3)    **DENIES** Defendants Silva Seeley or Ortega's Motion to Dismiss Plaintiff's

21  retaliation claims;

22        4)    **GRANTS** Defendant Walker's Motion to Dismiss Plaintiff's retaliation

23  claims.

24        5)    Defendants will serve and file an Answer to Plaintiff's FAC within the time

25  set forth in Fed.R.Civ.P. 12(a)(4)(A) to the remaining claims.

26  / / /

27  / / /

28  / / /

13

1      It is further ordered that:

2      6)      Plaintiff must show cause no later than thirty (30) days from the date this

3   Order is filed why the claims against Defendants Velardi, Canlas, Mellon, S. Roberts, J.

4   Walker and Clifton should not be dismissed for want of prosecution pursuant to

5   Fed.R.Civ.P. 4(m). If Plaintiff fails to provide the Court with documentation demonstrating

6   proper service on these Defendants within thirty (30) days from the date this Order is filed,

7   the claims against them in this action will be dismissed without prejudice.

8

9      **IT IS SO ORDERED**.

10

11   Dated:  January 11, 2017

12                                                 Hon. Anthony J. Battaglia

13                                                 United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:15-cv-01156-AJB-BLM