UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FABIAN NAVA,

Plaintiff,

v.

P. VELARDI, J. SILVA M.D., AVELINO CANLAS, M.D., M. MELLON, M.D., ROGELIO ORTEGA, S. ROBERTS, KYLE SEELEY, J. WALKER, CLIFFTON, NURSE PAMELA VELARDI, ROBERT WALKER, AND DAVID CLIFTON,

Defendants.

Case No.:  15cv1156-AJB(BLM)

**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING PLAINTIFF'S REQUEST TO REOPEN DISCOVERY**

**[ECF No. 58]**

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**.

## PROCEDURAL BACKGROUND

On May 21, 2015, Plaintiff Fabian Nava, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants P. Velardi (nurse practitioner), J. Silva (medical doctor), Avelino Canlas (medical doctor), M. Mellon (medical doctor), Rogelio Ortega (medical doctor), S. Roberts (medical doctor), K. Seeley (Chief Medical Officer), J. Walker (medical doctor/administrator), and David Cliffton (physical

therapist). ECF No. 1 ("Comp."). Plaintiff alleged claims under the Eighth Amendment. Id. at 5-11. On March 25, 2016, Plaintiff filed a First Amended Complaint ("FAC") against the same Defendants.[1] ECF No. 13. Plaintiff again alleges that his Eighth Amendment rights were violated as Defendants' failure to provide adequate medical care constituted cruel and unusual punishment. Id. at 5-6. Plaintiff further alleges that his First Amendment rights were violated as Defendants retaliated against him for pursuing his Eighth Amendment claims and Defendants engaged in a conspiracy to violate his constitutional rights. Id. at 7-8.

On September 9, 2016, Defendants Silva, Ortega, Seeley, and Walker filed a motion to dismiss Plaintiff's FAC for failure to state a claim for relief. ECF No. 28. Plaintiff opposed the motion. ECF No. 35. On January 11, 2017, the Court issued an order granting in part and denying in part Defendants' motion to dismiss. ECF No. 37. Specifically, the Court granted Defendant Ortega's Motion to Dismiss Plaintiff's Eighth Amendment claims, denied Defendants Silva, Seeley, and Walker's Motion to Dismiss Plaintiff's Eighth Amendment claims, denied Defendants Silva, Seeley, and Ortega's Motion to Dismiss Plaintiff's retaliation claims, and granted Defendant Walker's Motion to Dismiss Plaintiff's retaliation claims. Id. at 13. The Court also ordered Plaintiff to show cause why the claims against "Defendants Velardi, Canlas, Mellon, S. Roberts, J. Walker and Clifton should not be dismissed." Id. at 14. On April 24, 2017, the Court dismissed without prejudice Defendants Velardi, Canlas, Mellon, J. Walker, and Clifton due to Plaintiff's failure to show cause why the claims against them should not be dismissed. ECF No. 53.

On January 20, 2017, Defendants Silva, Ortega, Seeley, and Walker answered Plaintiff's FAC. ECF No. 38. On February 8, 2017, Defendant S. Roberts answered Plaintiff's FAC. ECF No. 43.

---

[1] The Complaint names J. Walker as a Defendant who is a doctor and administrator. ECF No. 1 at 3, 11. The FAC names Robert Walker who is a medical doctor and Chief Physician and Surgeon. FAC at 3, 13. In the Complaint, Plaintiff refers to J. Walker as R. Walker [see ECF No. 1 at 11] and the allegations against that Defendant mirror those made against Defendant Robert Walker in the FAC. As such, it appears that J. Walker and Robert Walker are the same Defendant.

On December 18, 2017, Defendants Ortega, Roberts, Seeley, Silva, and Walker filed a motion for summary judgment on the grounds that (1) Defendants are entitled to qualified immunity, (2) there are no genuine issues of material facts that could support a finding that Defendants violated Plaintiff's Eighth Amendment rights, (3) there is no evidence of retaliation, (4) there is no evidence to support a conspiracy claim, and (5) Defendants are immune from suit for monetary and punitive damages in their official capacities. ECF No. 58-2 ("MSJ"). On December 20, 2017, the Court issued a "Klingele/Rand Notice and Scheduling Order Re Defendants' Summary Judgment Motion" in which the Court advised Plaintiff of the requirements for opposing Defendants' summary judgment motion and set a briefing schedule for the MSJ. ECF No. 59. On March 28, 2018, Plaintiff filed an opposition to the MSJ. ECF No. 65. Defendants replied on April 9, 2018. ECF No. 66.

## LEGAL STANDARDS

### A. *Pro Se* Litigants

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter the courts' treatment of pro se filings; accordingly we continue to construe pro se filings liberally . . . ." This is particularly important where the petitioner is a pro se prisoner litigant in a civil matter).

### B. Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper.

3

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. Id. at 322-24. The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (citation omitted).

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Id. at 255. If direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citing T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)).

## C. Section 1983

42 United States Code Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 327 (1986). A person acting under the color of law deprives another "of a constitutional right, within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

## DISCUSSION

Plaintiff raises four claims for relief. FAC. First, Plaintiff alleges that Defendants violated

his Eighth Amendment right to be free from cruel and unusual punishment when they failed to properly treat his medical conditions. Id. at 17. Second, Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to provide him with proper medication to manage his pain. Id. Third, Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him for filing various grievances related to his medical care. Id. at 18. Finally, Plaintiff alleges that Defendants conspired against Plaintiff to violate his First Amendment rights. Id.

Plaintiff seeks declaratory relief, injunctive relief preventing Defendants from (1) obtaining ACA accreditation, (2) future reprisals against Plaintiff, (3) denying adequate medical treatment or medication due to costs, and (4) forcing Plaintiff to endure severe pain as a result of incorrect footwear, $900,000 in compensatory damages, $900,000 in punitive damages, and an order requiring Defendants to promptly provide "proper orthotic boots, and pain medication as outlined in Defendants' own guidelines," the costs of preparing and filing the instant matter, and any other relief the Court deems appropriate. FAC at 10, 18-19.

### A. Discovery

Initially, Plaintiff requests that the Court defer its ruling on the motion for summary judgment so that he may conduct additional discovery to "contradict Defendants' facts relied upon [] and as a basis for denial of the motion." Oppo. at 14. Defendants reply that (1) the period for discovery is closed, (2) Plaintiff chose not to conduct any discovery during the appropriate time period, (3) Plaintiff was not diligent, (4) Plaintiff does not identify what discovery he intends to conduct or how, and (5) granting Plaintiff's request would be prejudicial to Defendants. Reply at 5.

Fact discovery closed in this matter on July 21, 2017. ECF No. 39 at 2. Expert discovery closed on November 17, 2017. Id.

a. Fed. R. Civ. P. 16

Once a Rule 16 scheduling order is issued, dates set forth therein may be modified only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); see also ECF No. 39 at 6 (stating that dates and times "will not be modified except for good cause shown"). The Rule

16 good cause standard focuses on the "reasonable diligence" of the moving party. <u>Noyes v. Kelly Servs</u>., 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1294-95 (9th Cir. 2000) (stating Rule 16(b) scheduling order may be modified for "good cause" based primarily on diligence of moving party). Essentially, "the focus of the inquiry is upon the moving party's reasons for seeking modification." <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992). However, a court also may consider the "existence or degree of prejudice to the party opposing the modification . . . ." <u>Id.</u>

Plaintiff has failed to show good cause for modifying the scheduling order and reopening discovery. Plaintiff seeks: (1) a copy of the response to a February 4, 2013 letter from the Prison Law Office to the Receiver's Office of Legal Affair regarding Plaintiff's diagnosis and treatment plan and whether as a result of his January 20, 2013 fall he needed an MRI to develop a diagnosis (<u>see</u> FAC at Exh. 9), (2) medical records dated January 20, 2013 concerning his fall from the stairs, (3) a declaration by Correctional Officer McGee who allegedly witnessed Plaintiff's fall off of the stairs, (4) accommodation Chronos from 2013-2018, (5) doctors' notes and reports from December 2016, and (6) the surgical report from 2017. Oppo. at 14-15. Plaintiff provides no information concerning his diligence in attempting to obtain discovery prior to the deadline expiring. All of the discovery identified by Plaintiff, with the exception of chronos issued after July 2017 were available to Plaintiff during the discovery period. Plaintiff provides no evidence that he formally or informally tried to obtain the documents and Defendants state that Plaintiff did not conduct any discovery during the authorized discovery period. Reply at 5. As such, the Court finds that Plaintiff was not diligent in his efforts to obtain the identified discovery and therefore, there is no "good cause" to modify the scheduling order. The Court also finds that Defendants would be extremely prejudiced if discovery was reopened at this time because the case has been pending for more than three years, discovery has closed, and the motion for summary judgment is fully briefed. <u>See</u> <u>Goolsby v. Gentry</u>, 2015 WL 8479326, at *2–3 (E.D. Cal. Dec. 9, 2015) (finding that plaintiff failed to establish good cause for reopening discovery and noting that allowing additional discovery where the case had been pending for several years and the motion for summary judgment was pending and fully briefed would

"unfairly prejudice Defendants." Also noting that the outcome would be the same if analyzed under Fed. R. Civ. P. 56(d)). Accordingly, the Court **DENIES** Plaintiff's motion to modify the scheduling order.

   b.    <u>Fed. R. Civ. P. 56</u>

   While Defendants appear to characterize the motion for discovery as one brought under Fed. R. Civ. P. 16, the Court also will consider the motion under Fed. R. Civ. P. 56. <u>See</u> Reply ("Nava's request to defer this motion and conduct discovery should be denied for lack of diligence"). Rule 56(d) permits a court to defer or deny a motion for summary judgment or to allow a party to conduct additional discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56[d].[2]" <u>Morgan v. Schmidt</u>, 119 F.3d 6 (9th Cir. 1997) (noting that "[r]eferences in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)" and finding that "[b]ecause Morgan did not comply with the requirements of Rule 56(f), the district court did not abuse its discretion by granting the CHP Officer's summary judgment motion.") (citing <u>Brae Transp., Inc. v. Coopers & Lybrand</u>, 790 F.2d 1439, 1443 (9th Cir. 1986)); <u>see</u> <u>also</u> <u>Suhovy v. Sara Lee Corp.</u>, 2014 WL 1400824, at *2 (E.D. Cal. Apr. 10, 2014) (same). The Ninth Circuit has held that "[f]ailure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." <u>Suhovy</u>, 2014 WL 1400824 at *2 (finding that counsel's declaration as to the need for further discovery did not satisfy the requirements of 56(d) which requires litigants to submit affidavits setting forth the particular facts expected from further discovery and that the failure "alone serves as

---

[2] The provisions of subsection (f) of Rule 56 became current subsection (d) without substantial change during the 2010 Amendments of Rule 56. <u>See</u> <u>Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.</u>, 2016 WL 3613278, at *1 n.1 (D. Ariz. Feb. 22, 2016) ("Rule 56(d) was, until recently, Rule 56(f). While the number of the rule has been altered, the spirit of the rule remains unchanged") (citing <u>Michelman v. Lincoln Nat'l Life Ins. Co.</u>, 685 F.3d 887, 899, n. 7 (9th Cir. 2012) ("[F]ormer Rule 56(f) ... is substantially the same as current Rule 56(d).").

sufficient basis for the Court to deny [plaintiff's] request for a continuance.") (quoting Brae Transp., Inc., 790 F.2d at 1443). In addition, "[f]ailing to diligently pursue discovery ... is sufficient reason to deny further discovery." Garza v. Chavez, 2014 WL 3572148, at *2-*3 (C.D. Cal. July 18, 2014) (finding that *pro se* plaintiff's request to defer ruling on summary judgment motion so that he could conduct additional discovery that was made two days after filing his opposition brief, to be too late and noting that "the proper course of action was to file a much earlier request to push back the deadlines and defer ruling ... pursuant to Fed. R. Civ. P. 56(d)")(quoting Long v. Playboy Enterprises Internat'l, Inc., 565 F. App'x 646, 648 (9th Cir. Mar. 25, 2014) (citing Rector v. N.Y. Bank of Mellon, 2014 WL 631955, *5 (C.D. Cal. Feb. 14, 2014)).

The Court has considered the fact that Plaintiff is *pro se*, and understands that summary judgment is disfavored in cases with *pro se* plaintiffs who are incarcerated, where relevant evidence remains to be discovered. See Jones, 393 F.3d at 930 (summary judgment once additional discovery has been requested "is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim.") (quoting Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988). However, the deference accorded to *pro se* litigants is not without limits. See Garza, 2014 WL 3572148 at *3 (citing Rector, 2014 WL 631955 at *5 ("Not even a *pro se* party may without good cause wait until the Magistrate has issued his R & R on summary judgment motions before asking for more discovery to support or oppose those motions.")); Monarch Greenback, LLC v. Monticello Ins. Co., 118 F.Supp.2d 1068, 1081 (D. Idaho 1999) (motion for discovery continuance "cannot be filed after the deadline set for filing of the opponent's response brief and affidavits") (citing Ashton–Tate Corp. v. Ross, 916 F.2d 516, 520 (9th Cir. 1990)); and Ismail v. Ford, 2014 WL 1681993, *8 ("Nor is *pro se* status a license to disregard the clear requirements of the Federal Rules of Civil Procedure....").

Here, Plaintiff has not made the requisite showing. First, Plaintiff raised his discovery request in his opposition to Defendants' summary judgment motion, not in an affidavit or declaration. See Whitehurst v. Kauffmann, 2017 WL 761254, at *4 (C.D. Cal. Jan. 4, 2017) (noting that "[o]rdinarily a Rule 56(d) request must be made in a separate motion or formal request" and finding that plaintiff's request for further discovery under Rule 56(d) raised in his

opposition brief did not satisfy that requirement); see also Garza, 2014 WL 3572148 at *3 ("there is no Ninth Circuit authority that a party's request in an objection to an R & R can serve as the requisite motion either."); Lane v. Dep't of Interior, 523 F.3d 1128, 1135 (9th Cir. 2008) (recognizing that this court has allowed certain motions not formally denominated as Rule 56(f) requests to raise the issue of additional discovery adequately, but finding that plaintiff's "mentions of discovery in her opposition papers are insufficient.") (citing Brae Transp., Inc., 790 F.2d at 1443. Second, Plaintiff has not provided any reason why he was unable to obtain the identified discovery during the authorized discovery period. See Garza, 2014 WL 3572148 at *3 ("[f]ailing to diligently pursue discovery ... is sufficient reason to deny further discovery."). Third, Plaintiff has not established that the identified discovery is essential to his opposition. See Grant v. Unifund CCR Partners, 842 F. Supp. 2d 1234, 1242 (C.D. Cal. 2012) (denying plaintiff's request for additional time to conduct discovery and noting that "Plaintiff has not set forth any specific facts she hopes to discover; that those facts exist; or that those facts are 'essential' to withstand summary judgment" as required by Rule 56(d)). For example, Plaintiff has not established that there is a written response to the Prison Law Office's February 2013 letter or that the response contains facts relevant to Plaintiff's arguments that are not contained in other records already in evidence. White v. Baca, 2014 WL 12700946, at *3 (C.D. Cal. Feb. 6, 2014) ("The party seeking additional discovery also bears the burden of showing that the evidence sought exists."). Similarly, Plaintiff has not established the necessity for accommodation chronos from 2017-18 or that there are earlier relevant chronos that are not already in evidence or in Plaintiff's possession. Plaintiff also has not established whether Officer McGee observed Plaintiff's fall and whether his observations support Plaintiff's arguments. Because Plaintiff has not established either specified reasons for his failure to obtain the identified evidence or that the evidence is essential to his opposition, the Court **DENIES** Plaintiff's request to conduct additional discovery.

## B. Evidence the Court May Consider on Summary Judgment

In evaluating a motion for summary judgment, a court may only consider admissible evidence. See Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). A party may not

create a triable issue of fact merely by presenting argument in its legal memoranda.  See S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982); see also Estrella v. Brandt, 682 F.2d 814, 819–20 (9th Cir. 1982) (on summary judgment, statements in legal memoranda are not evidence and "do not create issues of fact capable of defeating an otherwise valid summary judgment motion").  However, if a *pro se* plaintiff submits a verified pleading, the court must consider the factual contents of the verified pleading.  See Lopez v. Country Ins. & Fin. Serv., 252 Fed. App'x 142, 144 n. 2 (9th Cir. 2007) (affirming summary judgment in favor of the defendant where the *pro se* plaintiff "failed to submit any admissible evidence in opposition to the defendants' motion for summary judgment ...," although observing that "[b]ecause [the plaintiff] was representing himself *pro se*, had he signed his pleadings and/or motions under penalty of perjury, the district court would have been required to treat them as evidence for the purpose of summary judgment); see also; Hoard v. Hartman, 2015 WL 9700537, at *2 (D. Or. Dec. 4, 2015) ("an unverified complaint is insufficient to counter summary judgment, a verified complaint may be used for that purpose 'to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'") (citations omitted); see also Jones, 393 F.3d at 923 (considering plaintiff's evidence where plaintiff "attested under penalty of perjury that the contents of the motions or pleadings are true and correct"); Harris v. Shelland, 2017 WL 2505287, at *4 (S.D. Cal. June 9, 2017) ("neither an unverified complaint nor unsworn statements made in the parties' briefs can be considered as evidence at this [summary judgment] stage"); and Barragan v. Flynn, 2017 WL 5070037, at *2 (S.D. Cal. Nov. 3, 2017) (same).

    In Fraser v. Goodale, 342 F.3d 1032, 1036-1037 (9th Cir. 2003), the court reversed a grant of summary judgment, holding that the district court should have considered unsworn, arguably inadmissible statements written by the plaintiff in a diary.  The Ninth Circuit reasoned that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." Id. at 1036-1037.  The court opined that the contents of plaintiff's diary "were mere recitations of events within [the plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at

trial in a variety of ways," including through plaintiff's testimony. Id. Because the contents

could be presented in an admissible form at trial, the court concluded that diary's contents

should have been considered as part of the summary judgment motion. Id.; see also Rosenfeld

v. Mastin, 2013 WL 5705638, *5 (C.D. Cal. Oct. 15, 2013) (considering plaintiff's unsworn

statements made in the third amended complaint and in the opposition because plaintiff "plainly

has personal knowledge of the content of these statements and could present the statements

in admissible form through his own testimony at trial," but not considering plaintiff's speculative

statements regarding a particular claim where there was no indication plaintiff had personal

knowledge of the claim); Wilson v. Med. Servs. Div., 2017 WL 1374281, at *7 (S.D. Cal. Apr.

13, 2017) (report and recommendation denied in part on other grounds) (finding that plaintiff

failed to show a triable issue of material fact even after considering plaintiff's opposition to the

motion for summary judgment that was not signed under penalty of perjury) (citing Rosenfeld,

2013 WL 5705638 at *5).[3]

---

[3] Several Ninth Circuit cases have interpreted Fraser to permit the consideration of unverified pleadings, unsworn memoranda, and other forms of inadmissible material at the summary judgment stage. See Jeffries v. Las Vegas Metro. Police Dep't, 713 F. App'x 549, 549–51 (9th Cir. 2017) (affirming district court's grant of summary judgment to defendant on plaintiff's 42 U.S.C. § 1983 claims and finding district court did not err in considering the exhibits attached to defendant's motion for summary judgment even though some of the exhibits were not authenticated "because a competent witness with personal knowledge could authenticate the exhibits at trial") (citing Fraser, 342 F.3d at 1036-37); see also Singleton v. Lopez, 577 F. App'x 733, 736 (9th Cir. 2014) (noting that "[i]t is not controlling at the summary judgment phase that the evidence was hearsay, so long as the evidence could be presented in an admissible form at trial," but finding that the magistrate judge did not abuse his discretion in refusing to admit a 2011 prison report where the statements were not relevant to pro se plaintiff's 42 U.S.C. § 1983 claims.) (citing Fraser, 342 F.3d at 1037); Aholelei v. Hawaii, Dep't of Pub. Safety, 220 F. App'x 670, 672 (9th Cir. 2007) (finding that the district court abused its discretion in not considering any of plaintiff's evidence when evaluating whether there had been a constitutional violation by prison officials because the evidence, which consisted primarily of litigation and administrative documents involving another prisoner and letters from other prisoners, "would be admissible at trial if the other inmates were called as witnesses.") (citing Fraser, 342 F.3d at 1036); and Santa Ana Police Officers Ass'n v. City of Santa Ana, 723 F. App'x 399, 402 (9th Cir. 2018) (affirming district court's granting of summary judgment on Plaintiffs-Appellants' 42 U.S.C. § 1983 claim and finding that the court did not improperly rely on Defendants' exhibits because they are not

Plaintiff's opposition was signed under penalty of perjury [see Oppo. at 70] so the Court will consider the relevant factual statements made by Plaintiff in the opposition in evaluating the pending motion. See Jones, 393 F.3d at 923 ("because Jones is *pro se*, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct"). Plaintiff's FAC was not signed under penalty of perjury. FAC at 19. Plaintiff's unverified FAC contains factual statements regarding his claims of Eighth Amendment violations and retaliation about which Plaintiff has personal knowledge. FAC. See FAC at 11-15. Because Plaintiff could testify under oath at trial regarding his personal knowledge, the Court will consider those statements. See Fraser, 342 F.3d at 1036-1037. This conclusion is further supported by the fact that Defendants do not object to consideration of Plaintiff's unverified FAC or the evidence submitted in support of the complaint. See Torres v. Rite Aid Corp., 412 F. Supp. 2d 1025, 1028, n.2 (N.D. Cal. 2006) (accepting as competent evidence unsworn declarations not made under penalty of perjury where defendant did not object to the deficiencies) (citing United States ex rel. Austin v. W. Elec. Co., 337 F.2d 568, 574–75 & n. 19 (9th Cir. 1964) (holding that court properly considered technically defective affidavits submitted in connection with summary judgment motion in light of opponent's failure to object); Scharf v. U.S. Attorney Gen., 597 F.2d 1240, 1243 (9th Cir. 1979) ("Generally ... formal defects [such as an affidavit not being based on personal knowledge] are waived absent a motion to strike or other objection....").

///

///

---

authenticated business records as that would "ignore[] the fact that evidence that is not currently in a form that is admissible at trial is 'admissible for summary judgment purposes [if it] 'could be presented in an admissible form at trial.'" (citing Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004) (quoting Fraser, 342 F.3d at 1037)).

C. **Eighth Amendment Claims**

1. Legal Standard

"Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs." Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." McGuckin, 974 F.2d at 1059-60. By demonstrating the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See id. Proof that a defendant acted with deliberate indifference is required to satisfy the subjective prong of an Eighth Amendment claim. See id. Deliberate indifference requires proof of facts sufficient to demonstrate that a prison official acted with a culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" Gibson v. Cty of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002) (quoting Farmer, 511 U.S. at 837), overruled on other grounds by Castro v. Cty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016).

Deliberate indifference to serious medical needs of prisoners "may be manifested in two

ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-06. The indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, a mere delay in medical treatment, without a showing of resulting harm, is insufficient to support a deliberate indifference violation. Wood, 900 F.2d at 1335; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). "In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect." Wood, 900 F.2d at 1334 (citation omitted).

"A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin, 974 F.2d at 1060. Facts indicating that the official "sat idly by as [the prisoner] was seriously injured despite the defendant's ability to prevent the injury" or that the official "repeatedly failed to treat an inmate properly or that a single failure was egregious strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs." Id. at 1060-61. "In sum, the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part of the defendant." Id. at 1061. Isolated incidents relative to a plaintiff's overall treatment suggests no deliberate indifference. Id. at 1060. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,

1060 (9th Cir. 2004).

Because Defendants are the moving parties, they "bear[] the initial responsibility" of identifying those portions of the record which they believe "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

### 2. Defendant Silva

Plaintiff alleges that Defendant Silva continually "denied [Plaintiff] of Effective Treatment and Diagnostic Testing [which] subjected Plaintiff to the unnecessary pain and suffering caused by this [right knee] condition due to the extreme delay in effective Care and could have been avoided." Oppo. at 8. Specifically, Plaintiff alleges that Defendant Silva (1) failed to provide follow-up care, (2) unreasonably delayed ordering an MRI of his knee, (3) failed to prescribe proper pain medication, and (4) did so due to budgetary concerns because of construction taking place at the medical facilities at RJ Donovan Correctional Facility ("RJD"). FAC at 14-15. Defendants contend that Plaintiff "will be unable to present any competent evidence that Defendant Silva was deliberately indifferent to [Plaintiff's] medical needs." MSJ at 22. Plaintiff argues that Defendant Silva's decision to conduct an MRI more than two years after Plaintiff's September 5, 2014 consultation constitutes an unreasonable delay in his care. Oppo. at 8.

### a. Relevant Medical Records

The undisputed medical records reveal the following treatment. On July 14, 2014, Plaintiff was examined by Defendant Silva as a follow-up to his April 21, 2014 appointment.[4] FAC at Exh. 20; see also ECF No. 58-3, Declaration of Jennifer Arnold, In Support of Motion for Summary Judgment ("Arnold Decl.") at 50-51 (Chronic Care Followup Visit/Progress Note). The Progress Note indicates that Plaintiff's main complaint is "worsening back pain." Id. Defendant Silva reviewed Plaintiff's May 21, 2008 MRI and August 15, 2008 EMG Nerve Study results and

---

[4] The medical record from the April 21, 2014 appointment has not been submitted to the Court. The earliest medical record provided to the Court that addresses care provided by Defendant Silva is the July 14, 2014 appointment. Neither party states whether this was Plaintiff's first consultation with Defendant Silva.

wrote that Plaintiff had been active and independent in his activities of daily life including showering, eating, and caring for himself, and working.  Id.  Defendant Silva observed that Plaintiff was able to ambulate normally and without assistance and that he was able to bend at his waist to about 70 degrees, but complained of back pain.  Id.  Defendant Silva concluded that he would attempt to get a copy of Plaintiff's 2008 MRI and EMG study scanned into the system and obtain updated x-rays because of the increased complaints of back pain.  Id.  Defendant Silva wrote that he would consider a possible repeat MRI due to Plaintiff's complaints of increased back pain at Plaintiff's next appointment which he suggested be scheduled in approximately ninety days.  Id.

On August 20, 2014, Plaintiff filed a CDCR Form 22 request for pain management and medical care.  FAC at Exh. 21 (Inmate/Parolee Request for Interview, Item, or Service CDCR 22).  The form was forwarded to Defendant Silva.  Id.  Plaintiff was seen by a nurse practitioner on August 27, 2014 and Plaintiff was prescribed Lyrica for lumbar radiculopathy.  Id. at Exh. 22 (September 5, 2014 Medical Progress Note).

On September 5, 2014, Defendant Silva examined Plaintiff for a fourteen day follow-up appointment.  Id.; see also Arnold Decl. at 59-60.  Defendant Silva noted that the previously requested 2008 MRI results had arrived and were consistent with degenerative disk disease at L4-L5 and that the 2008 EMG study was consistent with possible chronic motor radiculopathy at L5-S1.  Id.  Defendant Silva observed that Plaintiff was able to ambulate independently and "quite well" in and out of the clinic and to sit down and stand up without any difficulty.  Id.  Defendant Silva also noted that Plaintiff had received nonformulary approval for Lyrica, but had not yet received the medication.  Id.  Defendant Silva reviewed the restrictions of Lyrica with Plaintiff, had Plaintiff sign a pain contract, and wrote the prescription for Lyrica.  Id.

Defendant Silva examined Plaintiff on October 7, 2014 for complaints regarding "multiple medical issues."[5]  Arnold Decl. at 64.  Plaintiff reported decreased pain after starting Lyrica and

---

[5] Plaintiff's FAC does not mention any examinations or interactions with Defendant Silva following the September 5, 2014 visit.  FAC.

that he was able to perform his daily activities independently. Id. (Plaintiff "states [Lyrica] has provided the best relief of pain o[f] all the medications he has ever taken. Pain is reduced about 25-30 percent. He is asking for an increase in dose."). Defendant Silva increased Plaintiff's Lyrica to 100 mg "to optimize pain control" and reminded him about various behaviors that could result in the discontinuation of his Lyrica prescription. Id.

Defendant Silva examined Plaintiff on September 1, 2015. Id. at 72-73 (Primary Care Giver Progress Note). Plaintiff's chief complaint was lumbar radiculopathy. Plaintiff stated that he "feels back pain and radiculopathy is slowly progressing the past 4 years." Id. Plaintiff thinks Lyrica "may be wearing out sooner" but "he really does not want to be medicated." Id. Plaintiff also complained about right knee pain. Id. Defendant Silva reviewed a 2013 CT scan which showed "only minimal arthritis" and noted that Plaintiff did not have any mobility impairment and was able to work as a porter and do some exercise. Id. Defendant Silva offered to increase Plaintiff's Lyrica dose to 400 mg, but Plaintiff declined. Id. Defendant Silva ordered an updated MRI and opined possible "neurosx evaluation" may be necessary if MRI shows deterioration. Id. Defendant Silva prescribed a tapering dose of prednisone and noted that the right knee pain was likely due to radiculopathy. Id. Defendant Silva indicated that he would consider a knee MRI if the spine MRI shows improvement. Id.

On October 27, 2015, Defendant Silva examined Plaintiff and reviewed the spinal MRI report from October 21, 2015 which showed improvement from the 2008 MRI report and noted that Plaintiff was able to continue his work as a porter. Id. at 77-78 (Primary Care Provider Progress Note). Defendant Silva advised Plaintiff to refrain from heavy lifting and strenuous activity and referred Plaintiff to physical therapy. Id.

At a November 25, 2015 visit with Plaintiff to review the need for "LB", Defendant Silva noted that a request for physical therapy was pending and that he would "submit NF request for LB" and that if it was denied, he would consider ordering an EMG "to see if [Plaintiff] still has evidence of radiculopathy." Id. at 79-80 (Primary Care Provider Progress Note).

On December 22, 2015, Defendant Silva again examined Plaintiff to review the need for "LB." Id. at 81-82 (Primary Care Provider Progress Note). Plaintiff reported having difficulty

15cv1156-AJB(BLM)

sleeping due to increased pain at night and asked to increase his pain medication dosage. Id. Plaintiff acknowledged that he was fully functioning during the daytime and still working as a porter. Id. Defendant Silva noted that Plaintiff may have chronic radiculopathy despite his improved MRI, his physical therapy referral was still pending, and that he should continue to refrain from heavy lifting and strenuous activity. Id. Defendant Silva increased Plaintiff's nighttime Lyrica dosage to 200 mg. Id. at 81-83.

On March 28, 2016, Defendant Silva examined Plaintiff for a follow-up on his previous ENT and GI appointments and to follow-up on an RN referral from March 15, 2016 where Plaintiff requested a cane or walker to assist with his right leg pain. Id. at 83-84 (Medical Progress Note). Plaintiff had no history of mobility impairment, no issues making it into his doctor's appointments, and no issues with his work or other daily activities. Id. Plaintiff mentioned "an unwitnessed fall some time ago" due to his leg giving out from the pain.[6] Id. Defendant Silva conducted an extensive examination which revealed no edema, swelling of the knees or ankles, erythema, calf tenderness, joint line tenderness (right knee), or effusion (right knee). Id. Plaintiff had a full range of motion with flexion and extension of the knee bilaterally and no evidence of muscle atrophy. Id. Defendant Silva noted that Plaintiff was observed by several officers walking "with a brisk tandem gait and with no evidence of a limp." Id. Defendant Silva concluded that Plaintiff's "examinations do not support any evidence of mobility impairment or need for any assistive devices at this point in time." Id. at 84.

Defendant Silva examined Plaintiff on May 19, 2016 for a chronic care visit. Id. at 85-86 (Chronic Care Followup Visit/Progress Note). Defendant Silva examined Plaintiff and considered his numerous health issues and concerns. Id. With regard to Plaintiff's back and knee pain, Defendant Silva noted that Plaintiff had a former gunshot wound to his lower right leg, the same leg where he reports experiencing chronic pain. Id. Defendant Silva observed that Plaintiff had

---

[6] Plaintiff disputes that this fall was unwitnessed as stated in the submitted medical record. Oppo. at 6; see also Arnold Decl. at 83. Plaintiff states that he suffered a concussion as a result of the fall and had to be transported to the emergency room of the prison. Id. Plaintiff did not submit any medical records regarding his concussion or emergency room visit.

a normal tandem gait and no spinal tenderness.  Id.  He ordered Plaintiff to continue taking Lyrica and noted that Plaintiff was undergoing physical therapy.  Id.

On October 14, 2016, Plaintiff had another appointment with Defendant Silva concerning his right knee pain.  Id. at 91-92 (Medical Progress Note).  Defendant Silva noted metal fragments "around the lateral femoral condyle," but concluded Plaintiff was still able to tolerate an MRI.  Id.  Defendant Silva found that Plaintiff appeared to have no difficulty with ambulation despite his report that his leg "locked up a few days ago causing him to fall."  Id. Plaintiff's examination revealed normal gait, full extension, intact anterior-posterior drawer signs, some lateral joint tenderness, no medial joint line tenderness, normal patellar mobility with no evidence of hypermobility.  Id.  Plaintiff reported that his home exercise program was not successful and that his right knee pain had worsened.  Id.  Defendant Silva referred Plaintiff for a knee MRI.  Id.

On November 14, 2016, Defendant Silva had a follow-up appointment with Plaintiff to address his numerous chronic care issues.  Id. at 93-94.  Defendant Silva noted a negative straight leg raise test, that Plaintiff's bilateral lower extremity strength was 5/5, and a normal gait.  Id. at 93-98.  Plaintiff's knee MRI was pending.  Id.

On December 27, 2016, Defendant Silva followed up with Plaintiff regarding his December 16, 2016 MRI of the right knee.  Id. at 101.  The MRI revealed "separate tears involving the anterior and posterior aspects of the lateral meniscus" and "findings of early lateral compartmental osteoarthritis."  Id.  Defendant Silva noted that Plaintiff was "seen walking to the examination room, ambulating normally with no antalgic gait, and as soon as he entered the examination room, he displayed a limp."  Id.  Plaintiff also was able to sit and stand without issue revealing no evidence of a fusion or erythema.  Id.  Defendant Silva referred Plaintiff to orthopedics for possible arthroscopy and continued him on prescribed medication.  Id.  Dr. Amory successfully operated on Plaintiff's right knee on June 29, 2017.  Id. at 106.

b.  Analysis

Plaintiff argues that Defendant Silva was deliberately indifferent to his medical needs because he failed to order the treatment requested by Plaintiff and did not provide timely care.

19

FAC at 14-15; see also Oppo. at 14. The undisputed medical evidence shows that Defendant Silva (1) examined Plaintiff on numerous occasions over a two and one half year period, (2) ordered an MRI of Plaintiff's spine and knee, (2) requested physical therapy, (3) prescribed Lyrica as Plaintiff requested, and (4) increased Plaintiff's Lyrica dosage to help with his pain. Arnold Decl. at 59, 72, 77, 81, and, 91. Plaintiff does not dispute that Defendant Silva acted as described in the medical evidence. FAC, Oppo. Instead, Plaintiff asserts that Defendant Silva was deliberately indifferent because more than two years passed between the time Defendant Silva first examined him and the date of the knee MRI. Oppo. at 8.

Plaintiff's argument that there was an unreasonable delay in his treatment because he first saw Defendant Silva in July 2014, but did not receive a knee MRI until December 2016 is not supported by the evidence. The medical records indicate that Plaintiff did not raise the issue of his knee pain with Defendant Silva until his September 1, 2015 appointment which means that Defendant Silva ordered an MRI of Plaintiff's knee after thirteen months of treatment and not after two and a half years. See FAC at Exh. 20; see also Arnold Decl. at 50 (July 14, 2014 appointment notes stating "main complaint is a followup on chronic low back pain" and "[t]here are no other complaints at this time."), 59 (September 5, 2014 medical progress note mentioning that Plaintiff was prescribed Lyrica for radiculopathy and was able to ambulate independently with no mention of knee pain), 64 (October 7, 2014 progress note noting Plaintiff reported that his pain was reduced by 25-30% with the Lyrica and not mentioning knee pain or complaints).

Plaintiff asserts in his opposition and FAC that he repeatedly complained to medical staff, including Defendant Silva, that he was in constant pain and that the pain interferes with his activities of daily living. Oppo. at 5-8; FAC at 14-16. Plaintiff supports his claim by submitting an August 24, 2014 Inmate/Parolee Request in which Plaintiff complains that he was seen by Defendant Silva in July 2014, regarding his back and knee problems, but Defendant Silva would not look at his medical file and did not refer him for a back x-ray or see him again for pain

management as Defendant Silva promised. Oppo. at 69[7].  Because the Court must assume the truth of the nonmoving party's conflicting evidence and because Plaintiff is proceeding *pro se* and may be able to present some of the content in admissible form at trial, the Court will assume that Defendant Silva was made aware of Plaintiff's knee pain at the July 14, 2014 appointment. See Rosenfeld, 2013 U.S. Dist. LEXIS 151869, at *11 (citing Fraser, 342 F.3d at 1032).

While Plaintiff did not receive a knee MRI immediately upon meeting with Defendant Silva or upon mentioning that he was experiencing knee pain, the evidence establishes that Defendant Silva treated Plaintiff at least thirteen times between July 2014 and December 2016.  Arnold Decl. at 50, 59, 64, 72, 77, 79, 81, 83, 85, 87, 91, 93, 95, 97, 101; see also FAC at Exhs. 20 and 22.  The undisputed medical records show that Defendant Silva treated Plaintiff on a regular basis for chronic care and as requested for more acute issues.  Id.  During this time, Defendant Silva considered and responded to Plaintiff's medical complaints and provided gradational care. Id.  For example, Defendant Silva initially thoroughly examined Plaintiff, observed his physical capabilities and limitations, obtained and reviewed Plaintiff's old MRI and EMG studies, ordered new x-rays, and recommended continuation of stretching and weight lifting restrictions.  Id. at 50-51, 59-60.  Defendant Silva subsequently prescribed Lyrica to treat the radiculopathy, which he viewed as likely causing the knee pain.  Id. at 59-64.  When Plaintiff reported the effectiveness of Lyrica was decreasing, Defendant Silva increased, and then offered to further increase, the dose, ordered a spine MRI, prescribed a tapering does of prednisone, prescribed Tylenol, and considered a neurology examination.  Id. at 72-73, 81-83.  Based upon the spine MRI results, Defendant Silva referred Plaintiff to physical therapy and continued the activity limitations. Id. at 77-78, 81-86.  Because the pain continued, Defendant Silva ultimately ordered a knee MRI.  Id. at 91-94.  When the MRI revealed meniscus tears, Defendant Silva referred Plaintiff to orthopedics for further treatment.  Id. at 101.  As such, Defendant Silva was actively working to address Plaintiff's back and knee pain and to improve Plaintiff's medical situation and

---

[7] The request form provided by Plaintiff does not contain any response from Defendant Silva or any other prison staff.  Oppo. at 69.

did not sit idly by "as Plaintiff experienced serious medical needs." McGuckin, 974 F. 2d 1060-106; see also Graff v. Corr. Corp. of Am., 2016 WL 1170942, at *7 (D. Idaho Mar. 23, 2016) ("If medical personnel have been 'consistently responsive to [the inmate's] medical needs,' and there has been no showing that the medical personnel had 'subjective knowledge and conscious disregard of a substantial risk of serious injury,' summary judgment is appropriate.") (quoting Toguchi, 391 F.3d at 1061).

Plaintiff disputes that Defendant Silva had valid medical reasons for not ordering a MRI immediately and argues that "[t]he MRI was readily available to Plaintiff in September 2014 despite the metal fragment in his knee Defendants claimed to be the sole reason for not [o]rdering it in the past." Opp. at 8. Initially, the Court notes that Defendant Ortega, not Defendant Silva, was the doctor who opined that Plaintiff could not tolerate an MRI due to the metal fragments in his body. Id. at 48-89 (February 13, 2014 Medical Progress Note from Defendant Ortega stating that "I ordered a CT scan [of Plaintiff's right knee] because he has metallic fragments in the area that would preclude an MRI); see also Arnold Decl. at 35 (October 30, 2013 chronic care follow-up visit with Defendant Ortega for right knee plain noting that "[g]iven the fact that [Plaintiff] has metallic fragment in his right knee, this I believe precludes an MRI"), 38 (December 10, 2013 chronic care follow-up visit with Defendant Ortega noting that "[g]iven the fact that [Plaintiff] has metallic fragments in his right knee, I ordered a CT scan of his right knee for further workup"). Second, while Plaintiff states that he disputes Defendant Silva's claims that he had medical reasons for the care provided, Plaintiff provides no admissible evidence to support this assertion. Oppo. at 6-8. Finally, the submitted medical records establish that Defendant Silva did have medical reasons for not ordering a knee MRI prior to 2016. Specifically, Defendant Silva believed that Plaintiff's knee pain was due to the radiculopathy so he treated the radiculopathy and opined that if Plaintiff's back MRI showed improvement and Plaintiff was still suffering from knee pain, he would consider an MRI of the knee. Id. at 72 (Defendant Silva stating "I believe his knee pain is related to radi[c]ulopathy. If MRI shows improvement, then consider MRI of right knee."), 77 (Defendant Silva stating "I believe his knee pain is related to radiculopathy."). Defendant Silva ordered a knee MRI in

October 2016 because "[c]hronic right knee pain reportedly worsened. No evidence of recent trauma. Repeatedly failed home exercise program along with activity modification as well as Tylenol." Arnold Decl. at 91. While Plaintiff disagrees with Defendant Silva's decision not to order an MRI earlier, that disagreement cannot constitute deliberate indifference. See Colwell v. Bannister, 763 F.3d 1060, 1068 (9th Cir. 2014) ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.") (quoting Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012)); see also Kelly v. Elit, 2018 WL 2106486, at *2 (E.D. Cal. May 7, 2018) (same); Evans v. Cty. of San Diego, 2009 WL 3709183, at *12 (S.D. Cal. Nov. 3, 2009) (Report and Recommendation stating that at "most, Plaintiff has shown a difference of medical opinion among his treating doctors or a difference in opinion between him and medical personnel. This is not deliberate indifference, and mere negligence is not sufficient to survive a motion for summary judgment.") (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). This disagreement also does not create a triable issue of fact regarding the constitutionality of Defendant Silva's care. Estelle, 429 U.S. at 105.

Plaintiff also disputes that his "symptoms only worsened in 2016 and maintains that he has suffered these ambulation symptoms since 2007 and continued to complain to Defendants, but was ignored by Defendants." Oppo. at 8. Even if Plaintiff's statement is admissible and true, it does not create a triable issue of fact as to whether Defendant Silva was deliberately indifferent. The undisputed medical records reflect Plaintiff's complaints, identify reasons, including Defendant Silva's personal observations for discounting Plaintiff's claims, and establish that Defendant Silva provided ongoing and graduated care and did not ignore Plaintiff's complaints. In light of the extensive medical records, Plaintiff's bare statement that Defendants' ignored his medical complaints does not create a triable issue as to whether Defendant Silva was deliberately indifferent to Plaintiff's pain. See McGuckin, 974 F.2d at 1060; see also Arnold Decl. at 50, 59, 64, 72, 77, 79, 81, 83, 85, 87, 91, 93, 95, 97, 101; see also FAC at Exhs. 20 and 22.

Plaintiff also argues that an unconstitutional delay in treatment is established by the fact

that he had to file a Form 22 on August 20, 2014, a little over a month after his July 14, 2014 appointment with Defendant Silva, because Defendant Silva failed to provide follow-up treatment as promised. See Oppo. at 8; see also FAC at 14-15, Exh. 20 (Chronic Care Followup Visit/Progress Note); see also Arnold Decl. at 50; Oppo. at 13. However, the undisputed medical records establish that on July 14, 2014, Defendant Silva noted that a "[f]ollowup will be scheduled in approximately 90 days." FAC at 14, Exh. 20 (Chronic Care Followup Visit/Progress Note); see also Arnold Decl. at 50. In accordance with that directive, fifty-three days later, on September 5, 2014, Dr. Silva did examine Plaintiff again. FAC at 15, Exh. 22; see also Arnold Decl. at 59-60. As a result, there was no delay in treatment. Even if this brief break in treatment (fifty-three days between doctor exams or sixteen days after the Form 22 request) does constitute delay, it does not create a triable issue of fact regarding the constitutionality of Defendant Silva's medical care. See Wood, 900 F.2d at 1335 (a mere delay in medical treatment, without a showing of resulting harm, is insufficient to support a deliberate indifference violation); Shapley, 766 F.2d at 407. Plaintiff does not provide any evidence that the delay was harmful and the submitted medical records do not support such a finding. FAC at Exh. 20, 22; see also Arnold Decl. at 50, 59. In addition, while Dr. Silva did not see Plaintiff for fifty-three days, Plaintiff continued to receive medical care as he saw Nurse Practitioner Gysler on August 27, 2014. FAC at Exh. 22; see also Arnold Decl. at 59. Again, Plaintiff's disagreement with the type and timing of care does not create a triable issue of fact. See Colwell, 763 F.3d at 1068; see also Kelly, 2018 WL 2106486, at *2 and Evans, 2009 WL 3709183, at *12.

Plaintiff next argues that Defendant Silva's consideration of, or reliance on, costs or other prison policies in making treatment decisions does not excuse the unconstitutional care provided by Defendant Silva. Oppo. at 4. Initially, as set forth in this Report and Recommendation, Plaintiff has not presented evidence supporting his claim that Defendant Silva provided unconstitutional care. To the extent Plaintiff is arguing that a prison doctor cannot consider medical costs or other prison policies, such as whether a drug is formulary, Plaintiff is wrong. See Peralta v. Dillard, 744 F.3d 1076, 1084 (9th Cir. 2014) (en banc) ("A prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be

said to have intended to punish the inmate."); see also Patterson v. Lilley, 2003 WL 21507345, at *6 (S.D. N.Y. June 30, 2003) (granting defendants' motion to dismiss and "not[ing] that consideration of cost factors in choosing a course of treatment of a prisoner is, in and of itself, no more violative of a prisoner's constitutional rights than is, for example, the consideration of the cost of providing prescription drug coverage to non-incarcerated recipients of Medicare"); Caines v. Hendricks, 2007 WL 496876, at *8 (D.N.J. Feb. 9, 2007) (granting defendants' motion for summary judgment and noting that "it is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary. The deliberate indifference standard 'does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.'") (quoting Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) and (citing Brightwell v. Lehman, 2006 WL 931702, *8 (W.D. Pa. April 10, 2006) ("Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatment of choice.")); Winslow v. Prison Health Servs., 406 Fed. Appx. 671, 674 (3d Cir. 2011) (determining that allegation that doctor treated plaintiff with a hernia belt rather than surgery based on the cost of surgery was insufficient to state a claim of deliberate indifference because "the naked assertion that Defendants considered cost in treating [plaintiff's] hernia does not suffice to state a claim for deliberate indifference as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment").

Plaintiff states that on July 14, 2014, Defendant Silva decided not to order any treatment not already ordered previously, regardless of Plaintiff's pain, injury level or need [see FAC at Exh. 20] because RJD was "strapped for money right now due to all the construction on every medical facility at RJD." FAC at 14. The cited exhibit does not support Plaintiff's allegation. See Id. at Exh. 20. It also is unclear from Plaintiff's statement whether all, part, or none of it will be admissible at trial as the quote, which presumably Plaintiff attributes to Defendant Silva, does not address causation – that is whether he refused to provide medical care based on RJD's

financial situation.  See Federal Rules of Evidence.  Even if it is all admissible, it does not create a genuine issue for trial as all of the medical records, including the one cited by Plaintiff, establish that Defendant Silva did provide medical care and treatment to Plaintiff.  Anderson, 477 U.S. 242 at 256 (Plaintiff must "set forth specific facts showing that there is a genuine issue for trial.").  There is no evidence in the record that the potential cost of Plaintiff's treatment controlled Defendant Silva's medical judgment on how to most appropriately treat Plaintiff and it is undisputed that he did order additional expensive treatment for Plaintiff and prescribe Lyrica as requested.  Arnold Decl. at 72, 77, 81, and 91.  The evidence does not permit a reasonable fact-finder to find that cost considerations turned Defendant Silva's care into deliberate indifference or cruel and unusual punishment.

Finally, Plaintiff argues that he was "forced to sign a pain contract stating that [Defendant Silva] could discontinue [his prescription for Lyrica] for any reason, at any time". FAC at 15.  The evidence establishes that Defendant Silva did require Plaintiff to sign a pain medication contract prior to providing Plaintiff with Lyrica [see FAC at Exh. 22; Arnold Decl. at 59], however, that does not constitute deliberate indifference and no reasonable fact-finder could find otherwise based on the evidence provided.  Plaintiff does not provide admissible evidence beyond the pleadings or argument that the contract requirement establishes that Defendant Silva had a culpable mental state or was deliberately indifferent to a serious risk of harm.    FAC; see also Oppo.  As Defendant Silva's medical Progress Note explains, there are certain restrictions associated with the use of Lyrica and if those restrictions are breached, the Lyrica can be discontinued.  See FAC at Exh. 22; Arnold Decl. at 59.  Plaintiff signed the contract and received the prescription he had been seeking.  Id.

For the reasons set forth above, Plaintiff has not provided evidence establishing a genuine issue as to any material fact regarding the constitutionality of the medical care provided by Defendant Silva.  Even viewing the evidence in the light most favorable to Plaintiff, there is no evidence to support a finding that Defendant Silva was deliberately indifferent to Plaintiff's serious medical needs.  Rather, the evidence establishes that Defendant Silva treated Plaintiff on numerous occasions and provided care that addressed Plaintiff's complaints.  See Arnold

15cv1156-AJB(BLM)

Decl. at 50, 59, 64, 72, 77, 79, 81, 83, 85, 87, 91, 93, 95, 97, 101; <u>see also</u> FAC at Exhs. 20 and 22.  To the extent the care was different than what Plaintiff wanted or less than ideal, such care does not support a finding of deliberate indifference.  See <u>Estelle</u>, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."); <u>see also</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990) (noting that even gross negligence is insufficient to establish deliberate indifference to serious medical needs); and <u>Johnson v. Fortune</u>, 2016 WL 1461516, at *2 (E.D. Cal. April 4, 2016) ("a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983 claim.") (quoting <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344) (9th Cir. 1981).  The Court therefore **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's deliberate indifference claim against Defendant Silva.

### 3. Defendant Walker

After his February 13, 2014 appointment with Plaintiff, Defendant Ortega requested Lyrica for Plaintiff "to target the radicular pain" and submitted a nonformulary request. FAC at Exh. 13.  That same day, the nonformulary request was denied by Defendant Walker. <u>Id.</u> at Exh. 15.  Plaintiff's only allegation against Defendant Walker is that he denied Plaintiff's nonformulary request for Lyrica "even though it was proven that Plaintiff was in severe pain and required medication for that chronic severe pain."  FAC at 13, Exh. 15 (Nonformulary Drug Request).  Defendants contend that Defendant Walker's "decision to deny Lyrica as nonformulary does not amount to deliberate indifference."  MSJ at 24.

#### a. Formulary vs. Nonformulary Drugs

Plaintiff has submitted evidence showing that Defendant Walker denied the nonformulary[8] request for Lyrica.  FAC at Exh. 15.  Plaintiff has not submitted evidence creating

---

[8] The California Correctional Health Care Services ("CCHCS") formulary

is a list of drug products which have been approved by the Systemwide Pharmacy and Therapeutics (P&T) Committee for prescribing within California Correctional Health Care Services (CCHCS).  Drug products are periodically assessed and

a triable issue of material fact that Defendant Walker was deliberately indifferent to Plaintiff's medical needs because he denied the request.  There is no evidence that Defendant Walker played any role in determining what was considered to be a formulary or nonformulay drug and, in fact, Defendants submitted evidence showing that "[t]he systemwide P&T Committee has the exclusive authority[9] to add or delete drugs from the CCHCS formulary and to add or remove use criteria or restrictions from formulary drugs."  Arnold Decl. at Exh. 3.  There is also no evidence that Defendant Walker denied Plaintiff's request for any reason other than it being nonformulary.

> b. <u>Difference of Opinion Regarding Treatment</u>

Plaintiff argues that the CDCR only has two known effective pain controlling drugs for the treatment of chronic pain - - Methadone and Morphine.  FAC at 13, Exh. 14 (State of California Prison Health Care Services Pain Management Guidelines).  The Pain Management Guidelines that Plaintiff submits establish only that Methadone and Morphine are the "<u>preferred</u> 'strong' opioids of choice in chronic pain," not that they are the only effective means of controlling chronic pain or Plaintiff's pain.  <u>Id.</u> at Exh. 14 (emphasis added).  In addition, the form Plaintiff submits showing Defendant Walker's denial of the request for Lyrica, establishes that at least one other formulary drug had worked in the past so Lyrica was not Plaintiff's only option for pain relief.  <u>Id.</u> at Exh. 15 (Nonformulary Drug Request CDCR Form 7374 stating "Neurontin helped in the past").  The fact that Plaintiff was not prescribed the pain medication

---

> reviewed for inclusion, exclusion, or restrictions in the formulary based on current evidence-based clinical practices, guidelines, safety, and pharmacoeconomics. The purpose of the formulary is to promote rational, safe, clinically appropriate, and cost-effective prescribing within CCHCS.

Arnold Decl. at Exh. 3 ("California Correctional Health Services Formulary December 2017-V1). Medical providers should provide formulary drugs and the pharmacy should dispense generic equivalents when available.  <u>Id.</u>  A provider may prescribe a nonformulary drug if there is no appropriate formulary drug and they submit a request that is approved.  <u>Id.</u>  "The CCHCS Systemwide P&T Committee has the exclusive authority to add or delete drugs from the CCHCS formulary and to add or remove use criteria or restrictions from formulary drugs."  <u>Id.</u>

[9] There is no evidence that Defendant Walker is a part of the P&T Committee.

15cv1156-AJB(BLM)

of his choice does not constitute an Eighth Amendment violation.  It is clearly established law that "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983 claim."  Johnson, 2016 WL 1461516, at *2 ("a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983 claim.") (quoting Franklin, 662 F.2d at 1344); see also Redding v. Dhaliwal, 2011 WL 6153132, at *15 (D. Or. Oct. 4, 2011) (concluding that plaintiff failed to state an "Eighth Amendment claim on the basis of his care providers' failure to prescribe Oxycodone as opposed to non-narcotic pain medication" where the record was "replete with uncontradicted evidence that Redding has received alternative, non-narcotic pain medication, and moreover that valid medical reasons existed for refusing to prescribe the medication of Redding's choice"); Houseman v. Smith, 2013 WL 315245, at *9 (E.D. Cal. Jan. 25, 2013) (granting defendant's motion for summary judgment and finding that defendant's decision to substitute a higher dose of Tylenol with codeine instead of prescribing Norco did not suggest that defendant was deliberately indifferent, but instead suggested a mere difference of opinion between medical professionals as to the proper course of treatment "which is insufficient to give rise to a cognizable § 1983 claim").[10]

Plaintiff has failed to raise a genuine issue of material fact regarding Defendant Walker's

---

[10] Citing Hoang Minh Tran v. Haar, 2012 WL 37506 at *3–4 (C.D. Cal. Jan.9, 2012) (concluding that plaintiff's allegations that defendants refused to prescribe stronger and more effective medication for his pain reflects only a difference of medical opinion as to the necessary medication); Ruiz v. Akintola, 2010 WL 1006435, at *7 (E.D. Cal. Mar.17, 2010) (summary judgment for defendants granted with respect to plaintiff's inadequate medical care claim where he presented no expert evidence that the Ultram he was prescribed by defendants, instead of the Norco that had been recommended by U.C. Davis physicians, was not medically warranted or reasonable), affirmed 457 Fed. Appx. 637 (9th Cir. Nov. 2, 2011); Toguchi, 391 F.3d at 1058 (changing the prescription ordered by another physician is a mere difference of medical opinion insufficient to establish deliberate indifference); and Hughes v. CDCR, 2012 WL 3276991, at *1–2 (Aug. 9, 2012) (plaintiff failed to state cognizable Eighth Amendment claim where he complained that defendants refused to prescribe him Wellbutrin as he requested but instead approved ten alternative medications to treat his depression).

15cv1156-AJB(BLM)

deliberate indifference.  Looking at the evidence in the light most favorable to Plaintiff, a reasonable jury could not return a verdict in his favor.  Therefore, this Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's deliberate indifference claim against Defendant Walker.[11]

### 4. Defendant Seeley

Plaintiff alleges that Defendant Seeley refused to provide him with proper orthopedic footwear and pain management because it was too costly and because the metal fragment in his right knee area was too small.  FAC at 11.  Plaintiff also alleges that even after Defendant Seeley became the Chief Medical Executive at RJD, he continued to deny Plaintiff adequate medical care due to the high cost of the treatments and Plaintiff's history of filing medical grievances.  Id. at 12.  Defendants contend that Plaintiff "will be unable to present any competent evidence that Dr. Seeley was deliberately indifferent to his medical needs" as the evidence shows that Defendant Seeley treated Plaintiff with "prompt and customized care."  MSJ

---

[11] Even if the Court were to recommend a finding that Defendant Walker was deliberately indifferent, the Court would also recommend that Defendants' motion for summary judgment be granted on qualified immunity grounds.  Viewing the evidence in the light most favorable to Plaintiff, even if there was a violation of Plaintiff's constitutional right, there is no clearly established right to receive a nonformulary drug.  Given that individuals outside of the prison system can be subjected to an insurance program that requires them to use formulary drugs before nonformulary drugs can be approved, Plaintiff's position that his Eighth Amendment rights were violated by the initial denial of Lyrica is untenable.  See Rozzelle v. Rossi, 2007 WL 2571935, at *8 (W.D. Pa. Aug. 31, 2007) (finding that defendants were entitled to summary judgment based on qualified immunity and concluding that "it would not be clear to a reasonable official that it was unlawful to require a prisoner-patient to try the formulary drugs first and have them prove ineffective before approving treatment with non formulary drugs since non-incarcerated citizens, who find themselves in health care plans with formularies, are subjected to these very same requirements at the hands of Moving Defendants' civilian counterparts, i.e., Health Care plan physicians, administrators, and treatment review committees"); see also Olivier v. Grounds, 2014 WL 4983683, at *8 (N.D. Cal. Sept. 30, 2014) (finding that defendants were entitled to qualified immunity even if a constitutional violation occurred as Defendant's decision to deny "Plaintiff's request for non-formulary Topomax was based on his determination under the CDCR pharmacy procedure that Plaintiff was first required to try formulary medications.  Therefore, a reasonable medical staff member in Defendant Sepulveda's stead could have believed that such a decision did not violate Plaintiff's clearly established constitutional rights.").

at 21. Defendants note that there is nothing in the record supporting Plaintiff's allegation that Defendant Seeley denied Plaintiff treatment or medication because it was too costly. Id. at 22.

To support this claim, Plaintiff submits an x-ray report and correspondence with the Prison Law Office ("PLO"). FAC at 11-12, Exhs. 2, 7-9. Exhibit 2 is a report from Desert Advanced Imaging Palm Desert dated January 25, 2012 regarding an x-ray of Plaintiff's right knee. Id. at Exh. 2. The report state that is "no evidence of acute fracture or dislocation" but mentions the presence of a "small metallic fragment" possibly from a prior gunshot wound. Id. The report is addressed to "Kyle Seeley, D.O." and a handwritten note indicates that he reviewed it and referred Plaintiff to the RN line for follow-up treatment. Id.; see also MSJ at 22. The report does not mention cost concerns. Id.

The correspondence consist of three letters. Id. at Exhs. 7-9. In the first letter dated January 14, 2013, the PLO advised Plaintiff they wrote to prison officials on December 10, 2012 inquiring about Plaintiff's knee injury and care and spoke with Defendant Seeley, the acting Chief Medical Executive of RJD, by telephone on January 10, 2013. FAC at Exh. 7 (January 14, 2013 Letter from PLO to Plaintiff). The PLO reported to Plaintiff that Defendant Seeley stated that (1) in early 2012 it was determined that a MRI and specialist consult were not necessary because Plaintiff had not yet completed his home therapy treatment, (2) Plaintiff had been seen by his primary care physician on November 26, 2012 and had a follow-up appointment scheduled for February 19, 201[3], (3) Plaintiff was receiving Tylenol #3, Tylenol, and Elavil and was put on Pamelor in August, (4) notes from Plaintiff's November 26, 2012 appointment showed that he had been refusing medications, and (5) custody officers in Plaintiff's unit reported that he was a lead porter and good worker which indicated that his knee was not causing problems with Plaintiff's activities of daily living. Id. Plaintiff wrote to the PLO on January 15, 2013 and disputed Defendant Seeley's representations. Id. at Exh. 8. Plaintiff stated that (1) he did see his primary care doctor on November 26, 2012, but was told that the visit was not for his knee pain, (2) he refused his medication on that date because his liver specialist told him not to take any medication at that time, (3) he did not have a say in being employed as a porter and his boss confirmed that his work is limited due to his back and knee problems, and (4) his knee

gave out and he fell on the stairs on January 20, 2013.  Id.  The PLO sent another letter to RJD on February 14, 2013 advising "Legal Affairs" that Plaintiff reported falling and hurting himself and inquiring about Plaintiff's diagnosis and treatment plan.  Id. at Exh. 9.  The letter is not addressed to Defendant Seeley and does not reference any action taken by Defendant Seeley or any issues regarding the costs of medical care.  Id.  Plaintiff does not provide any other evidence regarding the treatment provided by Defendant Seeley.

Even if all of the facts set forth in the four documents is admissible, Plaintiff has not created a triable issue of material fact that Defendant Seeley was deliberately indifferent to Plaintiff's medical needs.  First, there is no evidence that Defendant Seeley personally treated Plaintiff.  Second, there is no evidence that Defendant Seeley made a medical decision as opposed to merely reporting to the PLO what the medical records reflect.  Third, if Defendant Seeley did make a medical decision, there is no evidence that he acted with deliberate indifference or with the required culpable mental state.  Fourth, there is no evidence that Defendant Seeley denied Plaintiff's request for orthopedic footwear or alternative pain medication.  Finally, there is no evidence that any of Defendant Seeley's medical decisions were based on financial considerations.  Even if they were, taking budgetary and cost concerns into account in making treatment decisions does not constitute deliberate indifference.  See Peralta, 744 F.3d at, 1084; see also Patterson, 2003 WL 21507345 at *6; see also Caines, 2007 WL 496876 at *8 (quoting Reynolds, 128 F.3d at 175 and citing Brightwell, 2006 WL 931702 at *8); and Winslow, 406 Fed. Appx. at 674.  Here, there is no evidence that budgetary concerns overrode Defendant Seeley's medical judgment.

For the reasons set forth above, this Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's deliberate indifference claim against Defendant Seeley.

### 5. Defendant Roberts

Plaintiff's only allegation against Defendant Roberts is that he was deliberately indifferent to Plaintiff's medical needs because he denied Plaintiff's February 18, 2014 Health Care Appeal at the second level of review and denied Plaintiff's March 7, 2014 Reasonable

15cv1156-AJB(BLM)

Modification or Accommodation Request at the second level. FAC at 14, Exh. 18. Defendants contend that Defendant Roberts should not be held liable because his role was limited to reviewing Plaintiff's grievances. MSJ at 24-26. Plaintiff does not address Defendant Roberts or the defense argument. Oppo. Defendants' reply reiterates that Defendant "Roberts cannot be liable for deliberate indifference for his limited role in denying [Plaintiff's] healthcare grievance." Reply at 5.

Plaintiff submitted an Inmate/Parolee Health Care Appeal Form on February 18, 2014, regarding his disagreement with the medical treatment he received, that was bypassed at the first level of review, denied at the second level by Defendant Roberts, and denied at the Director's Level on July 23, 2014. FAC at Exh. 18 at 87-92 (Inmate/Parolee Health Care Appeal Form Attachment, April 1, 2014 Institution Response for Second Level HC Appeal, and July 23, 2014 Institution Response for Second Level HC Appeal). On March 7, 2014, Plaintiff filed another 1824 request seeking a walking aid and an appointment with a pain specialist. Id. at Exh. 18 at 94 (Reasonable Modification or Accommodation Request). The request was denied on April 14, 2014 by Defendant Roberts and M. Glynn at the second level of review and denied at the Director's Level of Review. Id. at Exh. 18 at 96-99 (April 14, 2014 Institution Response for Second Level HC Appeal, and July 23, 2014 Institution Response for Second Level HC Appeal).

Plaintiff does not have a constitutional right to an effective grievance or appeal procedure. See Riley v. Dunn, 2011 WL 4940855, at *7 (C.D. Cal. Oct. 14, 2011) (citing Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure).[12] "A prison official's denial of an inmate's

---

[12] Also citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988); George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under § 1983); and Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.").

33

grievance or appeal . . . . generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability." Buchanan v. Garikaparthi, 2017 WL 4640419, at *7 (S.D. Cal. Oct. 16, 2017) (citing Wilson v. Woodford, 2009 WL 839921, *6 (E.D. Cal. 2009)).

Plaintiff does not identify any evidence or medical records showing that Defendant Roberts treated Plaintiff for any medical problems or examined Plaintiff for any reason. FAC, Oppo. Because Plaintiff has not established the personal involvement of Defendant Roberts in the alleged constitutional violations and has not "set forth specific facts showing that there is a genuine issue for trial," this Court **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's claim of deliberate indifference against Dr. Roberts be **GRANTED**.[13] Anderson, 477 U.S. at 256; see also Buchanan, 2017 WL 4640419, at *7-*8 (recommending that defendants' motion for summary judgment be granted based on a lack of evidence of an Eighth Amendment violation where defendant Roberts did not personally treat plaintiff or become involved in plaintiff's case until after the alleged violation occurred and plaintiff failed to show how defendant Roberts' denial of his three 602 Health Care Appeals constituted "significant involvement in an alleged Eighth Amendment violation sufficient to establish personal liability").

### D. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The court must consider the following two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) "whether the right was clearly established . . . . 'The

---

[13] Even if the Court were to recommend that Defendant Roberts was deliberately indifferent, the Court would also recommend that Defendants' motion for summary judgment be granted on qualified immunity grounds. See Buchanan, 2017 WL 4640419, at *7-*8 (finding defendant Roberts entitled to qualified immunity where plaintiff failed to show how defendant Roberts' denial of his three 602 Health Care Appeals constituted "significant involvement in an alleged Eighth Amendment violation sufficient to establish personal liability").

15cv1156-AJB(BLM)

contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201–02, (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Courts are not required to address the two inquiries in any particular order and may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 243 (2009).

The Court does not need to decide the issue of qualified immunity because the Court is recommending summary judgment in favor of Defendants Walker, Seeley, Silva, and Roberts on the ground that "Plaintiff has not established a genuine issue of material fact as to whether any of them were deliberately indifferent to Plaintiff's serious medical need." Auld v. Deel, 2018 WL 747664, at *9 (S.D. Cal. Feb. 7, 2018) (not reaching the argument that defendants were shielded from liability by qualified immunity "because the Court grants summary judgment to Dr. Luu, Dr. Canles, Dr. Nayyar, Dr. Deel, and Nurse Boucher on the basis that Plaintiff has not established a genuine issue of material fact as to whether any of them was deliberately indifferent to Plaintiff's serious medical need."); see also Kunkel v. Dill, 2012 WL 761247, at *32 (E. D. Cal. Mar. 7, 2012) ("[t]here is no need to consider the defense of qualified immunity with respect to the claims that the Court has resolved in Defendant's favor on summary judgment") (citing Wilkie v. Robbins, 551 U.S. 537, 567 (2007)); Solomon v. Felker, 2015 WL 1469165, at *3 (E. D. Cal. Mar. 30, 2015) (stating that "[b]ecause the undersigned finds that defendants did not violate plaintiff's constitutional rights, there is no need to address the second prong of the qualified immunity test.); Baker v. Perez, 2013 WL 4046377, at *13 (E. D. Cal. Aug. 8, 2013) ("[b]ecause defendant Medina is entitled to summary judgment as to the merits of this claim, the undersigned need not address the second prong of the qualified immunity analysis); supra at p. 14-34.

///

**E. Retaliation**

    1. <u>Legal Standard</u>

A retaliation claim has five elements (1) Defendants took adverse action against Plaintiff (2) because of (3) Plaintiff's protected conduct (filing grievances), and that such action (4) chilled the exercise of Plaintiff's First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>see also</u> <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir. 2005). Plaintiff has the burden to show that his "protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." <u>Rogers v. Rivas</u>, 2011 WL 13193170, at *3 (S.D. Cal. Feb. 9, 2011) (quoting <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989)).

    2. <u>Analysis</u>

Plaintiff's FAC generally alleges that

> The defendants . . . . took reprisals against plaintiff for his lawful attempts to redress grievance(s). Defendants and each of them conspired to keep plaintiff from filing grievance(s) and staff complaints by threatening denial of adequate medical care. Defendants and each of them acted in violation of plaintiff's First Amendment Right to redress grievance(s).

FAC at 18. With regard to Defendant Seeley, Plaintiff further alleges that as Chief Medical Executive of RJD, he "was refusing plaintiff adequate medical care because of cost and due to plaintiff filing medical grievance(s)." <u>Id.</u> at 12. With regard to Defendant Ortega, Plaintiff further alleges that Defendant Ortega stated that Plaintiff was not provided Lyrica due to the cost and because "medical staff were fed up with plaintiff filing grievance(s)." <u>Id.</u> at 13. Plaintiff does not provide any additional allegations regarding Defendants Silva or Roberts. FAC. Plaintiff's opposition does not contain any facts supporting his retaliation claims against these four defendants. Oppo.

Initially, Plaintiff's allegations in the FAC are not admissible evidence as Plaintiff has not established that he has personal knowledge of facts supporting the claim that Defendant Seeley refused adequate medical care due to Plaintiff filing medical grievances. While Plaintiff could

argue that Defendant Ortega's statement is admissible, the statement is that "medical staff" is fed up with Plaintiff's grievances; the statement does not support a conclusion that Defendant Ortega took adverse action against Plaintiff due to the filing of grievances.  As such, Plaintiff's allegations in the FAC do not constitute admissible evidence supporting his retaliation claims.

In addition, Plaintiff has not provided any evidence establishing the specific adverse action that each defendant took "because of" Plaintiff's protected conduct of filing grievances, that Plaintiff's grievance filing was the substantial or motivating factor behind Defendants' conduct, or that the adverse action chilled the exercise of Plaintiff's First Amendment rights or "would chill or silence a person of ordinary firmness from future First Amendment activities." Brodheim, 584 F.3d at 1271.  In fact, in one appeal, Plaintiff stated that the filing of appeals and grievances had actually improved the quality of care that he received:

> I have finally in the past month's [sic] gotten a little attention through and because of 602 appeal process.  Recently on Feb/12/14 I was called to see Doctor Ortega for a follow up on the issue of a catscan [sic] that was done on my right knee and we talked about all the medications that have in the past been prescribed to me. Including the T-3 and he is aware that this medication is bad on my liver because of my liver disease so he prescribed Lyrica to me which is a nerve damage medication. Same that is given to other patients here at RJD with like medical problems as mine.

Oppo. at 52 (emphasis added); see also FAC at Exh. 13 (February 13, 2014 Medical Progress Note from Defendant Ortega).  Moreover, as discussed above, Plaintiff was prescribed Lyrica, despite the cost, and continued to receive constitutionally adequate medical care from Defendants and RJD medical staff after filing grievances.

Plaintiff has failed to provide any admissible evidence supporting his retaliation claim against Defendants Seeley, Silva, Ortega and Roberts.  Plaintiff has not established that any of the Defendants (1) took adverse action against Plaintiff (2) because of (3) Plaintiff's protected activity of filing grievances. Watison, 668 F.3d at 1114-15. Because Plaintiff has not established the first three elements, there is no evidence to support a finding of a "chilling effect" or to permit a determination of whether there was a "legitimate correctional goal." Id.  The evidence

that has been submitted to the Court would not permit a reasonable jury to return a verdict for Plaintiff against any of these Defendants. Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's retaliation claim.

### F. 42 U.S.C. §1986 Conspiracy

#### 1. Legal Standard

42 U.S.C. § 1986 states in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action

A section 1986 claim is predicated upon a violation of section 1985. See 42 U.S.C. § 1986; see also 42 U.S.C. § 1985, Delta Sav. Bank v. United States, 265 F.3d 1017, 1024 (9th Cir. 2001). Section 1985(3) requires a complaint to allege "(1) a conspiracy, (2) to deprive any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States." Davis v. Paramo, 2017 WL 2578747, at *13 (S.D. Cal. June 13, 2017) (quoting Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980), and (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin, 403 U.S. at 102; see also RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (holding that under § 1985(3), a plaintiff must demonstrate that defendants were motivated by ""some racial, or perhaps otherwise class-based, invidiously discriminatory animus"). "A § 1985 claim 'must allege facts to support the allegation that defendants conspired together. A mere allegation of

conspiracy without factual specificity is insufficient.'" <u>Hamilton v. Hurtado</u>, 2013 WL 3964755, at *7–8 (S.D. Cal. July 31, 2013) (quoting <u>Karim–Panahi</u>, 839 F.2d at 626 (citations omitted); <u>see</u> <u>also</u> <u>Olsen v. Idaho State Bd. of Med.</u>, 363 F.3d 916, 929 (9th Cir. 2004) (quoting <u>Burns v. Cnty. of King</u>, 883 F.2d 819, 821 (9th Cir. 1989)) ("To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'").

Here, Plaintiff has failed to bring a claim under section 1985 and to present evidence permitting a reasonable jury to find a violation of section 1985. Nowhere in his FAC or Opposition does Plaintiff claim that Defendants' actions were motivated by race or class based animus and Plaintiff provides no evidence to support such a claim. In addition, Plaintiff has failed to provide anything but conclusory allegations of conspiracy. FAC at 18 (Defendants "conspired with each other and took reprisals against plaintiff for his lawful attempts to redress grievance(s). Defendants and each of them acted illegally and knowingly to violate plaintiff's First Amendment Right of the United States Constitution."). Plaintiff provides no evidence, or specific facts, to support his conspiracy claim. Accordingly, this Court **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's conspiracy claims be **GRANTED**.

## G. *Respondeat Superior* Liability

In his FAC Plaintiff alleges "[t]here is an informal policy at RJD of giving low and no medical care to high-risk medical needs inmate(s) if/when they file grievance(s)." FAC at 15. In his opposition, Plaintiff raises the issue of supervisor liability and alleges that the constitutional violations he suffered were the result of policy decisions set in motion by Defendants. Oppo. at 3-4.

A supervisor may be individually liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989)). To be held liable, a supervisor need not be physically present when the alleged constitutional injury occurs nor be "directly and personally involved in the same way as are the individual

officers who are on the scene inflicting constitutional injury." <u>Starr</u>, 652 F.3d at 1205 (citation omitted). Rather, the requisite causal connection is established when a supervisor "set[s] in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." <u>Id.</u> at 1207-08 (citation omitted). A supervisor may also be held liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates, acquiescence in the constitutional deprivation," or "conduct that showed a reckless or callous indifference to the rights of others." <u>Id.</u> at 1208 (citation omitted). Additionally, a supervisor may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." <u>Hansen</u>, 885 F.2d at 646 (internal quotation marks and citation omitted).

Plaintiff does not provide any evidence of a policy that one or more of the Defendants put into place, let alone a policy that was "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." <u>Hansen</u>, 885 F.2d at 646. If Plaintiff is alleging that there was a policy of denying inmates treatment that was deemed to be too costly, that allegation is not supported by the submitted evidence. As stated previously, while Defendants have conceded to considering the costs of treatment or budgetary constraints in their treatment of Plaintiff, the submitted medical records demonstrate that the final decisions were based on the medical information available to each doctor and that the final treatments were not dictated by potential cost. <u>See</u> FAC at, Exhs. 2, 7, 15, 19, 20, 21, 22; <u>see also</u> Arnold Decl. at 59, 64, 72, 77-87, 93-97, and 101. There is also no evidence that there "is an informal policy at RJD of giving low and no medical care to high-risk medical needs inmate(s) if/when they file grievance(s)." FAC at 15. As explained above, Plaintiff has not provided any admissible evidence supporting his retaliation claim.

### H. Official Capacity and Damages

Defendants contend that "[t]o the extent [Plaintiff] seeks money damages, including punitive damages, against Defendants in their official capacities, judgment should be entered in Defendants" favor because the Eleventh Amendment protects them from being sued as

"persons" under § 1983.  MSJ at 28.  Plaintiff agrees that "he cannot seek monetary damages against state officials in their official capacity," but is seeking monetary damages against Defendants in their personal capacities.  Because the Court is recommending that Defendants' motion for summary judgment be granted, any damage issue is moot.  However, if the District Judge permits a claim to proceed forward, the Court **RECOMMENDS** that Plaintiff be prohibited from requesting monetary damages from Defendants in their individual capacities.

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; and (2) granting Defendants' motion for summary judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than <u>August 31, 2018</u>**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than <u>September 14, 2018</u>**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  8/9/2018

Hon. Barbara L. Major
United States Magistrate Judge

41